UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Jin Myung, et al., | Case No. 2:24-cv-02182-CDS-NJK |
| Plaintiff | **Order Denying the Defendant's Motions for Summary Judgment** |
| v. | |
| Colonial Van Lines Inc., et al., | [ECF Nos. 30, 31] |
| Defendants | |

Plaintiffs Jin Myung and Derek Kinoshita brought this breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion action against defendant Respect, LLC, and defendant Colonial Van Lines, in the Eighth Judicial District Court. *See* Compl., ECF No. 1-2. On November 21, 2024, Colonial removed this action because the plaintiffs' claims gave rise to a federal question, namely the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. *See* ECF No. 1. After removal, the plaintiffs filed an amended complaint asserting claims of relief for damages under 49 U.S.C. § 14706, conversion, and trespass to chattels. *See* First am. compl., ECF No. 19.

On June 9, 2025, Colonial filed a motion for summary judgment. *See* Mot. for summ. j., ECF No. 30. This motion is fully briefed. *See* Opp'n, ECF No. 34; Reply, ECF No. 36. That same day, Colonial filed a motion for summary judgment regarding liability. *See* Mot. for summ. j. liability. ECF No. 31. This motion is also fully briefed. *See* Resp., ECF No. 35; Reply, ECF No. 37.

For the reasons stated herein, I deny Colonial's motion for partial summary judgment related to the Carmack Amendment and deny Colonial's second summary judgment related to liability.

I.      Background

A.  The plaintiffs' allegations[1]

Around May 2023, Jin Myung moved from Las Vegas, Nevada to Fargo, North Dakota. *See* ECF No. 19 at 3, ¶ 7. The plaintiffs assert that on or around May 2023, Myung hired Allegiance Moving and Storage, LLC to relocate her property from Nevada to North Dakota for a restaurant they would be operating. ECF No. 19 at 3, ¶ 8. As alleged, Allegiance hired Respect, LLC to handle the transport of the plaintiffs' belongings, and in turn, Respect, LLC hired Colonial Van Lines to move the property from Las Vegas, Nevada, to Fargo, North Dakota. *Id.* at ¶¶ 9–10.

Colonial picked up the property in Las Vegas and headed toward Fargo. ECF No. 19 at ¶ 11. But while driving to Fargo, Colonial was involved in a collision, so it did not deliver the plaintiffs' property. *Id.* at ¶ 12. The plaintiffs allege that the defendants knew that the plaintiffs were relying on them to transport items that they would need for the restaurant that the plaintiffs were going to operate. *Id.* at ¶ 15. The plaintiffs also assert that they were damaged as a result thereof, namely lost income and lost profits (investors withdrew from the restaurant they would be operating in North Dakota), as well as the loss of confidential information and family keepsakes. *Id.* at ¶¶ 17–18.

As a result, the plaintiffs filed this action. Thereafter, a Colonial representative informed the plaintiffs that their property was in storage, and that they would need to pick it up or else it may be sold. *Id.* at ¶ 20.

B.  MoveR Van Lines interstate bill of lading and carrier agreement

On May 3, 2023, Derek Kinoshita and Jin Myung signed the bill of lading with MoveR Van Lines to transport their personal belongings to Fargo. Interstate bill of lading, Def.'s Ex. 1, ECF No. 30-1 at 2. In its bill, MoveR Van Lines presented Derek Kinoshita and Jin Myung with two options for the carrier's liability for loss or damage of their household goods. *Id.* The first option permitted full replacement value protection, which was the most comprehensive plan

---

[1] Unless otherwise noted, the court only cites to the plaintiffs' amended complaint (ECF No. 19) to provide context to this action, not to indicate a finding of fact.

available for their goods. *Id.* The second option was a waiver of full replacement value protection, which provided only minimal protection that is considerably less than the average value of household goods. *Id.* Under the second option, a claim for an article that may be lost, destroyed, or damaged while in the mover's custody would be settled based on the weight of the individual article multiplied by 60 cents. *Id.* The plaintiffs selected the second option and confirmed their choice by initialing "JM" next to "I wish to Release My Shipment to a Maximum Value of 60 Cents per Pound per Article." *Id.*

On May 19, 2023, MoveR Van Lines and Moshe Quillinan, on behalf of Colonial Van Lines, signed a "Carrier Hauling Agreement for Interstate Carriers as Independent Contractors." *See* Carrier hauling agreement, Def.'s Ex. 2, ECF No. 30-2. That agreement provides, in relevant part:

> If damage or injuries to a shipper's goods are a direct and undisputed result of the negligence of a carrier then carrier will be responsible for any and all claims of loss or damage at a maximum rate of $0.60 per pound per article.
>
> Carrier is completely indemnified from any and all liability assessed to the company by virtue of the company's employees, drivers, operators, crew, agents, independent contractors or designated representatives.
>
> In all cases, liability of carrier shall be limited to the minimum valuation governing interstate shipments of household goods or $0.60 per pound per article.
>
> Carrier must employ or contact properly licensed and trained drivers/operators and crew members. The actual employer of the driver/operator/crew member is liable and responsible for all the actions of their respective worker.

*See id.* at 3–4.

### C.  The accident

On May 20, 2023, Moshe Quillinan was driving a Colonial tractor truck carrying the plaintiffs' personal property. *See* Traffic report, Def.'s Ex. 3, ECF No. 30-3 at 10. While driving through Wyoming, Quillinan was in an accident. *Id.* Colonial Van Lines was listed as the carrier.

*Id.* at 12. The Colonial tractor truck was towed by Stauffer's Towing to its yard in Rock Springs, Wyoming. *Id.* at 5.[2]

### D.  Toshiba Hinds's deposition

On May 19, 2025, Toshiba Hinds's deposition was taken. *See* Hinds dep., Def.'s Ex. 4, ECF No. 30-4. Hinds is part of Colonial's operations team customer service and a claims manager. *Id.* at 4. Hinds stated that Colonial Van Lines is not affiliated with MoveR Van Lines and that Colonial never picked up the plaintiffs' items and were not associated with the plaintiffs' move. *Id.* at 5. Hinds further provided that a Colonial tractor was used by a subcontractor of Colonial, and that Quillinan "was not authorized to even use [the] tractor in order to transport those items for Mover Van Lines." *Id.* at 6.

Hinds stated that the Colonial truck that Quillinan was driving had a Colonial Van Lines logo on the outside of the truck. *Id.* Following the accident, Colonial "terminated the driver." *Id.* at 7.

Hinds also stated that Myung called for the first time regarding her items around June of 2023, but at that time Colonial did not have her contract information so they were unable to look up her account. *Id.* at 8. In September of 2023, Colonial learned that Myung's items were in storage in Evanston, Wyoming. *Id.*

### E.  The agreement between Colonial and Quillinan

On March 20, 2023, Colonial and Quillinan entered into an independent contractor operating agreement. *See* Indep. contractor operating agreement, Def.'s Ex. 1, ECF No. 31-1. The agreement provides in relevant part:

> Company shall have exclusive possession, control, and use of the Equipment for the duration of this Agreement, although only for those periods that the Equipment is operated by or for COMPANY, as an independent motor carrier. CONTRACTOR shall not operate the Equipment for any other motor carrier without COMPANY'S prior written consent, which shall not be unreasonably withheld.

*Id.* at 2.

---

[2] To date, the plaintiffs have not received their property. *See* ECF Nos. 34, 35, 53.

## II.  Legal standard

### A.  Summary judgment

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, indicates "no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit" based on the governing law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "mere disagreement or the bald assertion that a genuine issue of material fact exists" is not enough to defeat summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Because the plaintiffs bear the burden of proof at trial, a moving defendant need only point to an absence of evidence on an element of the plaintiffs' case. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250–51. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018); *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

### B.  Carmack Amendment

"The Carmack Amendment is a federal statute that provides the exclusive cause of action for interstate shipping contract claims, and it completely preempts state law claims alleging delay, loss, failure to deliver and damage to property." *See White v. Mayflower Transit, L.L.C.*, 543 F.3d 581, 584 (9th Cir. 2008) (citing *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687–88 (9th Cir. 2007)).

5

The purpose of this amendment was to provide "a uniform national liability policy for interstate carriers." *See id.* (citing *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992)).

To prevail on a claim under a Carmack Amendment, a plaintiff must demonstrate three elements: (1) the goods were delivered to the carrier in good condition; (2) "the goods were damaged or loss while in the carrier's possession"; and (3) damages. *See ASARCO LLC v. England Logistics Inc.*, 71 F. Supp. 3d 990, 994 (D. Ariz. 2014) (citing *Missouri P.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964)). After a plaintiff makes this showing, the burden is on the carrier to show that the damage was caused by the shipper himself or by the inherent vice or nature of the goods. *Thousand Springs Trout Farms, Inc. v. IML Freight, Inc.*, 558 F.2d 539, 542 (9th Cir. 1977).

**III.   Discussion**

Colonial brings a motion for summary judgment asserting that: (1) the plaintiffs' damages should be limited to the agreed upon measure of damages set forth in the interstate bill of lading contract; and (2) that the Carmack Amendment preempts the plaintiffs' state law claims. ECF No. 30. That same day, Colonial filed a separate summary judgment motion related to liability, requesting that the court find that Colonial was not the carrier responsible for moving the plaintiffs' belongings and cannot be liable under the Carmack Amendment. *See* ECF No. 31. I first address Colonial's limited damages arguments.

**A.   The plaintiffs have met their burden and have shown a genuine issue of material fact as to whether the signed contract limited their damages against Colonial.**

Colonial argues that the plaintiffs' damages should be limited to the agreed upon measure of damages as set forth in the interstate bill of lading contract. ECF No. 30 at 2. Colonial specifically asserts that the plaintiffs were offered full value protection and that the plaintiffs waived full protection. *Id.* at 11. Based on these facts, Colonial requests the court to limit the plaintiffs' damages to the assigned value of the cargo, which was 60 cents per pound. *Id.*

In opposition, the plaintiffs assert two arguments: (1) Colonial's attempt to limit damages is inconsistent with Ninth Circuit precedent; and (2) Colonial cannot limit its damages based on Respect's bill of lading after holding the plaintiffs' goods in storage for over two years. *See* ECF No. 34 at 6, 8. The plaintiffs assert that as a result of being deprived of their goods for over two years, they suffered the loss of personal property valued at $194,830.00 and business property valued at $24,160.00. *Id.* at 8. The plaintiffs further claim a loss of enormous revenue from their business, approximated at over $2 million dollars. *Id.*

The Carmack Amendment establishes a covered carrier is considered liable for damages that it causes to property it transports in the amount of the "actual loss or injury to the property." *See Forman Motorworks, LLC v. Sema Logistics, Inc.*, 2025 U.S. Dist. LEXIS 154245, at *17 (D. Ariz. Aug. 8, 2025) (citing 49 U.S.C. § 11707(a)(1)). However, a **carrier** is not fully liable if it can show: (1) that it gave the shipper a reasonable opportunity to choose between two or more levels of liability; (2) that the shipper agreed to a particular liability limit; and (3) that the carrier issued a bill of lading that reflects the agreement to the shipper before moving the shipment. *See Hughes Aircraft Co.*, 970 F.2d at 613 (emphasis added).

As a threshold matter, the court must address Colonial's attempt to take irreconcilable positions in its two motions. ECF Nos. 30, 31. In this motion for partial summary judgment regarding the Carmack Amendment, Colonial asserts it *is* a **carrier** so this court should find its damages are limited and grant its motion accordingly. *See* ECF No. 30 (arguing Colonial is a Carrier-Shipper so the Carmack Amendment applies). Yet, in its second motion, Colonial argues that the independent contractor did not have authority to bind Colonial, so they cannot be liable as a carrier under Carmack. ECF No. 31 at 7 ("Colonial was **not the carrier** and cannot be liable under the Carmack Amendment."). Either Colonial *was* a carrier, or they *were not.* Colonial's attempt to argue both positions demonstrates why they are not entitled to summary judgment. I nonetheless address the arguments in Colonial's motion.

7

There is no genuine dispute of material fact that the plaintiffs were offered a reasonable opportunity to choose between two levels of liability. *See* Def.'s Ex. 1, ECF No. 30-1 at 2. Indeed, the plaintiffs do not dispute that they signed and initialed the waiver of full replacement of protection and chose to select the lower released value of 60 cents per pound per article. ECF No. 34 at 8. So the crux of the issue is the third prong related to the bill of lading and if it reflects the agreement to the shipper before moving the shipment. Here, the interstate bill of lading was signed and agreed upon between MoveR Van Lines and the plaintiffs, not the plaintiffs and Colonial. Consequently, there is a genuine issue of material fact whether Colonial can raise the enforcement of the bill of lading agreement as a carrier on behalf of MoveR Van Lines.

While it certainly seems possible that Colonial could attempt to enforce the bill of lading, it cites no authority for this court to enforce the interstate bill of lading limitations on damages signed by MoveR Van Lines. *See* ECF Nos. 30, 36. Thus, while there is no question regarding the limitation of liability signed by plaintiffs, Colonial has not provided a showing how this limitation of liability applies to them, especially given their Rule 30(b)(6) witness testified in deposition that were not associated with MoveR Van Lines. *See* Def.'s Ex. 4, ECF No. 30-4 at 5. Because I find that there is a genuine issue of material fact as it pertains to limiting Colonial's liability, I deny its motion for summary judgment on this ground.

**B. There is a genuine issue of material fact regarding whether the state law claims are preempted by the Carmack Amendment.**

In addition to the Carmack Amendment claim, the plaintiffs assert a conversion claim alleging that even after failing to deliver their goods, Colonial exercised dominion and control over their goods for more than eighteen months to date. *See* ECF No. 19 at 6, ¶ 29. The plaintiffs also assert a trespass to chattels claim, arguing that the defendants intentionally and without authorization interfered with the plaintiffs' possessory interest. *Id.* at ¶ 33.

Colonial asserts that the Carmack Amendment preempts the plaintiffs' state law claims. ECF No. 30 at 2. In opposition, the plaintiffs in essence argue that the claims are not preempted, and the state law claims arise from separate actions. ECF No. 34 at 10. In particular, the plaintiffs argue that their state-law claims do not arise from the defendant's non-delivery of their goods in May of 2023; instead, the claims arise from Colonial withholding their goods in storage in Wyoming for more than two years and failing to provide the plaintiffs with information to retrieve their personal belongings. *Id.*[3]

In *Hall v. North American Van Lines, Inc.*, the Ninth Circuit found that the Carmack Amendment preemption applied to the plaintiff's common law fraud and conversion claims, "even though [her] claims arise from events other than loss or damage to her property," because "the Carmack Amendment constitutes a complete defense to common law claims alleging all manner of harms." 476 F.3d at 689; *see also White*, 543 F.3d at 584 (explaining the Carmack Amendment completely preempts state law claims alleging delay, loss, failure to deliver and damage to property). Moreover, because trespass to chattels is a species of conversion, conversion claims may also be preempted. *See Crane v. Zip 2 Zip Transfer*, 2016 U.S. Dist. LEXIS 162098, at *5–6 (C.D. Cal. Nov. 21, 2016) (finding that the Carmack Amendment constitutes a complete defense to plaintiff's trespass to property claim as it does for the conversion claim).

Here, Colonial has created a genuine issue of material fact as to whether they are, or are not, a carrier under Carmack. If Colonial's position was that they were a carrier in this contract, then the Carmack Amendment would preempt the state law claims. *See Prussin v. Bekins Van Lines, LLC*, 2015 U.S. Dist. LEXIS 12740, at *7 (N.D. Cal. Feb. 3, 2015) ("If the party is a *carrier*, the Carmack Amendment will apply and preempt any state law claims related to the delivery of the goods; however, if the party is a broker, the state law claims will not be preempted." (emphasis added) (quoting *Laing v. Cordi*, 2012 U.S. Dist. LEXIS 101639, at *2 (M.D. Fla. July 23, 2012)). But

---

[3] The plaintiffs assert that they were not given information concerning their goods until March 2025. ECF No. 34 at 10. Colonial disputes this and asserts that the plaintiffs were notified that their belongings were in storage in September of 2023. ECF No. 36 at 3.

9

Colonial's argument states that the state law claims are preempted, while also arguing they are not a carrier.

Because of the self-created conflict, namely if Colonial is a carrier or not, genuine issues of material facts remain outstanding. So I deny Colonial's summary judgment motion as to its request to preempt the state law claims.

**C.  A genuine issue of material facts exists as to Colonial's liability.**

Colonial's arguments that it is not liable to the plaintiffs because the independent contractor agreed to move the plaintiffs' belongings and lacked authority to enter into a contract that would subject Colonial to liability under the Carmack Amendment fail for the same reasons explained above. ECF No. 31. Whether Colonial should be liable for a contract entered into by someone who previously had authority to use its tractor truck creates a genuine issue of material fact. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (explaining on summary judgment motions, courts view the facts and draw reasonable inferences in light most favorable to the nonmoving party). Likewise, the issue of whether Colonial is a carrier or not is an issue of fact a jury will need to resolve, so summary judgment is inappropriate. Consequently, Colonial's motion for summary judgment as to liability is denied.

**IV.    Conclusion**

IT IS HEREBY ORDERED that the defendant's motions for summary judgment [ECF Nos. 30, 31] are DENIED.

Dated: February 6, 2026

_____
Cristina D. Silva
United States District Judge

10